## UNITED STATES v. STATE OF OKLAHOMA ex rel. STATE HIGHWAY COMMISSION OF OKLAHOMA (three cases).

### Nos. 3582–3584.

Circuit Court of Appeals, Tenth Circuit.

April 29, 1948.

As Amended July 1, 1948.

Roger P. Marquis, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., and Whitfield Y. Mauzy, U. S. Atty. and R. L. Davidson, Sp. Asst. to U. S. Atty., of Tulsa, Okl., on the brief), for appellant.

Mac Q. Williamson, Atty Gen. of Oklahoma (Mainard Kennerly, Asst. Atty. Gen., of Oklahoma, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The sole question in these cases is the interpretation of a contract in the form of a stipulation executed February 21, 1941, between the United States of America, the State of Oklahoma, and the Grand River Dam Authority, and various individuals representing these three parties. The controversy resulting in this stipulation arose out of the construction of the Grand River Dam. The Grand River Dam Authority is an agency of the State of Oklahoma, created for the purpose of developing the Grand River for flood control, power and other purposes.

On July 26, 1939, the Federal Government gave the Grand River Dam Authority a license to operate the Dam when it was completed. Article 12 required the Authority

to acquire all necessary lands, easements, and rights-of-way for flowage rights up to the elevation of 750 feet, and further required it to raise all railroads affected by the project to an elevation above 755 feet, as was necessary to provide for the operation of the railroads when the reservoir was raised to the elevation of 755 feet.

Article 13 authorized the licensee to operate the reservoir in such a manner as to utilize storage space below elevation 745 for power production purposes, but not to utilize storage space above elevation 745. The storage capacity between 745 and 755 was expressly reserved for the control of floods, and the licensee was required to impound the waters between these two elevations and to release them when, as, and in the manner directed by the Secretary of War or his authorized representative. It was provided, however, that the licensee was not required to impound any water above elevation 750 until the United States had acquired the necessary flowage rights above that elevation.

The Dam was constructed to an elevation which would permit impounding waters up to the 755-foot level. In March, 1940, when it was about to be placed in operation, a dispute arose with the State of Oklahoma which resulted in the institution of a suit by the State in the State Courts to enjoin the Authority from closing the gates, and caused the Governor of Oklahoma to call out the militia. The State's complaint was that its highways and bridges would be inundated without the State or its Highway Commission being compensated therefor and without the highways being relocated. Thereafter, the United States instituted a suit in the Federal District Court for the Northern District of Oklahoma, known as Civil Number 351,[1] to enjoin interference with the completion of the project, the interest of the Federal Government being based upon the financing arrangements, one condition of which obligated the Authority to complete the project, including the Dam, to a height of 755 feet by March 30, 1940.

While all of this litigation was pending, the parties, on February 21, 1941, entered in-to the stipulation involved in this controversy. The parties to this stipulation were the United States, the Federal Works Agency, the State of Oklahoma, the State Highway Commission of Oklahoma, and the Grand River Dam Authority. The stipulation provided that all of the pending litigation should be dismissed and that the Governor would countermand his declaration of martial law. The Federal Works Agency agreed to participate in highway projects in the reservoir area on a specified basis in a total amount of $1,127,950. The State and its Highway Commission agreed to accept Grove Bridge which had cost some $369,083.00, as a part of its highway system. The Works Progress Administration also agreed to the maximum extent permitted by law, to participate in projects to be located and constructed at times and places mutually agreeable, to the extent of a total estimated outlay of $438,000.00.

The stipulation further provided:

"The State of Oklahoma and its State Highway Commission waive, quitclaim, and forever renounce any and all claims, charges and demands that the State of Oklahoma and its State Highway Commission now have or may have against the Grand River Dam Authority, on account of the overflowing and inundation of public lands and public property, and the overflowing, inundation and required relocation of State roads, highways and bridges in the Grand River Dam Reservoir area, occasioned by the operation of said project to an elevation of 755 feet above mean sea level at the dam."

Upon the execution of this stipulation, all pending litigation was dismissed and the Grand River Dam Authority took over the operation of the project. Thereafter the United States Government instituted these condemnation suits to acquire the fee title to flowage rights necessary for the operation of the Dam to 755-foot elevation. The State of Oklahoma and the Highway Commission were made parties to this action. Appraisers were appointed to assess and to allow damages. No compensation was awarded to the State for its highways within the Dam area. Exceptions were filed to this report. The United States moved for

---

[1] No opinion for publication.

judgment on the ground that under the stipulation filed in Civil Number 351, the State was precluded from recovering any additional compensation for the flooding of the highways occasioned by the elevation of the project to elevation 755. The State at first took the position that it was entitled to additional compensation because of a partial failure of consideration under the stipulation. The trial court, however, found that there was no failure of consideration but concluded that the settlement for damage to State property in the stipulation was between the State and the Authority, and did not contemplate a release of any claim on the part of the State against the United States for damages to its property ocasioned by raising the water from 750 to 755 feet.

These appeals relate solely to the claim of the State of Oklahoma for additional compensation for damages to its highways caused by the operation of the project to the 755-foot level. Paragraph five of the stipulation was a grant by the State and its Highway Commission to the Authority of flowage rights over state roads, highways and bridges up to the elevation of 755 feet, and a complete satisfaction and relinquishment of any claim by the State for damages on account of the overflowing and inundation of lands and property of the State, including state roads, highways and bridges. Thereafter, the Authority could fill the reservoir to the full height of 755 feet without incurring any liability to the State on account of damage to its property. It is, of course, true that the stipulation does not in express terms grant any flowage rights to the United States or release it from liability on account of the operation of the project. The reason for this is quite obvious. The United States did not operate the project. It was operated by the Authority. The right of the United States was limited as between it and the Authority to control the use of the upper ten feet for flood control purposes. This arrangement between the United States and the Authority conferred no additional rights or claim for damages upon the State. If the United States saw fit, it could relinquish its right to direct the Authority in the use of the upper ten feet of the reservoir. The Authority could then fill the reservoir to its full capacity without any liability to the State for damages to its property because the State had expressly relinquished all such claims by its execution of the stipulation. The Authority could, of course, refuse to raise the water in the reservoir to the 755-foot level until the United States obtained for it flowage rights over all State and private property necessary to permit raising the water from 750 to 755 feet. The Authority got these rights, as far as the State was concerned, by the execution of the stipulation. It obtained such rights to private property by the condemnation proceedings out of which this litigation arose.

We must keep in mind that while the project was operated by the Authority, it was largely financed by the Federal Government. The United States paid the State of Oklahoma the consideration it received under the stipulation in satisfaction of all damage occasioned by the operation of the project by the Authority to the 755-foot level. Significance is sought to be attached to the fact that the United States is not mentioned in that part of the stipulation in which Oklahoma releases its claim for damages. We think it is more reasonable under all the circumstances in the case to assume that Oklahoma, having acknowledged receipt of full satisfaction for all damages to its property from the operation of the project by the Authority to the 755-foot level, would have reserved its rights against the United States if it had intended to claim additional compensation from the United States. What the parties sought by the stipulation was a complete settlement between them which would secure to the State adequate compensation for damage to its property and would permit the operation of the project to its full capacity. If this was not the intent of the stipulation, it would not have been necessary for the United States to be a party thereto.

The license required the United States to secure the necessary flowage rights between the elevation 750 and 755 feet. It seems clear to us that the license contemplated that these flowage rights would be acquired for the Authority. The Authority

acquired full flowage rights with regard to the State's property by the execution of the stipulation in which the State acknowledged full satisfaction of all claims for damages to all of its property, and received from the United States the consideration therefor. When the United States, under the Federal Power Agency, took over the operation of the Dam, it took the right of the Authority to the flowage rights between elevation 750 and 755 feet.

The Government acquired the additional flowage rights to private property between elevation 750 and 755 feet by these condemnation proceedings. It was not necessary to join the State of Oklahoma or the Highway Commission as parties defendant in these suits other than to acquire the naked legal title to the roads, bridges and highways over which it already had acquired flowage rights by the execution of the stipulation. The award to the State should have been limited to nominal damages and necessary costs to it in the condemnation proceedings in the District Court.

An additional point is raised in Case Number 3583. The Government contended that the State's exceptions to the Commissioners' report were not filed within the time prescribed by law and that the court therefore lacked jurisdiction to allow the exceptions to the report. The first Commissioners' report was filed July 31, 1944. It failed to make any award to the State. On December 13, 1944, the State filed a motion for an order directing the Commissioners to re-inspect the property and to consider the injury, if any, to the public highways located upon it and to assess and report the damages thereto. It is sufficient to say that the motion was not an exception to the Commissioners' report because no report had been made with regard to any State property. Rather, it was a request that a report be made. Pursuant to an order entered on the motion, the Commissioners did make the report and assess the damages in question on this appeal.

The judgments of the trial court are Reversed and the causes are Remanded with direction to assess only nominal damages to the State in the condemnation proceedings in the trial court. The costs of these appeals are assessed against the appellees.

BRATTON, Circuit Judge, dissenting.

The critical provision in the stipulation provided in clear and explicit language that the State and the State Highway Commission waived and relinquished all claims and demands which they then had or might thereafter have against the Authority caused by the operation of the project to an elevation of 755 feet. If it had provided that the State and the State Highway Commission waived their claims without specifying the entity or agency against which such claims were waived, there might be basis for concluding that in view of the background against which the contract was entered into it was intended to waive all claims against the United States. But the stipulation failed to do that. It recited the nature of the claims and specified the entity or agency against which they were waived. That entity or agency was the Authority. The United States was not mentioned. To construe the stipulation as constituting a waiver in favor of the United States amounts to writing into it that which the parties omitted. It is my view that the stipulation did not constitute a settlement of the claim now asserted by the State; that the State is entitled to compensation for the injury it sustained; and that the judgments should be severally affirmed.